# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Greensboro Division

_____

GAYLA PRICE )
)
)   Case No.  1:19-cv-960
        Plaintiff, )
)
    v. )   **INDIVIDUAL AND**
)   **COLLECTIVE ACTION**
BH MEDIA NEWS & RECORD, )   **COMPLAINT**
BH MEDIA GROUP, INC., )
BERKSHIRE HATHAWAY, INC., )
and KELLY YOUNG )
)   **JURY TRIAL DEMANDED**
        Defendants. )
_____ )

PLAINTIFF GAYLA PRICE, by and through her counsel, brings this action in her individual capacity, and on behalf of all others similarly situated, corporate Defendants BH MEDIA NEWS & RECORD, BH MEDIA GROUP, INC., BERKSHIRE HATHAWAY, INC. (hereinafter "BH Defendants") and individual Defendant KELLY YOUNG, stating as follows:

## NATURE OF ACTION

1.     Plaintiff Gayla Price (hereinafter "Plaintiff" or "Ms. Price") was repeatedly the victim of egregious sexual harassment—specifically, close-up, indecent exposure of a male coworker's genitalia—during her employment with the Greensboro News & Record.

2.     The News & Record had been aware since 2014 that her harasser, Defendant Kelly Young, was exposing himself to female employees at the News & Record offices. Nothing was done, however, to address his obscene conduct or to protect Ms. Price, and

other women at the News & Record, from Defendant Young's repeated exhibition of his bare penis. Defendant Young has since pled guilty to indecent exposure charges brought by the Plaintiff and has been committed to treatment for sexually deviant behavior.

3.     Ms. Price, a former employee of the News & Record, brings this action against her former employer, its parent companies and her harasser, Kelly Young, to redress issues of sexual harassment, race and sex discrimination, disparate pay, retaliation and wrongful termination.

4.     Ms. Price also brings this collective action on behalf of herself and other similarly situated female advertising sales employees of BH Media Group, Inc. for widespread and systemic discriminatory practices that have resulted in substantial pay disparities for women sales associates at its 77 media properties nationwide.

5.     Plaintiff brings claims pursuant to the protections against sexual harassment and discrimination in employment  provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (hereinafter "Title VII"), the Equal Pay Act and North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. Ann. §§ 143-422.1 to 143-422.3.   Ms. Price seeks herein to remedy the sexual harassment, race and gender discrimination and disparate pay that she suffered during her employment at the Greensboro News & Record.

6.     Additionally, Plaintiff brings claims pursuant to the protections against employer retaliation provided by Title VII, 42 U.S.C. § 2000e-3(a), and North Carolina's Retaliatory Employment Discrimination Act, N.C. Gen. Stat. Ann. §§ 95-240 to 95-245.

2

Ms. Price seeks to remedy the retaliatory conduct by BH Defendants against her for lodging complaints about the sexual harassment and discrimination that she experienced.

7. In addition, Plaintiff asserts claims under North Carolina law for wrongful termination of employment for opposing or resisting criminal conduct, for intentional infliction of emotional distress, and against Defendant Young for simple assault.

## PARTIES

8. **Plaintiff Gayla Price** is a black, female resident and citizen of Guilford County, North Carolina. Ms. Price was employed by the Greensboro News & Record in advertising sales positions from May 18, 2016 until she was wrongfully terminated by constructive discharge on May 5, 2017.

9. **Defendant BH Media News & Record** is a North Carolina corporation with its principal place of business in Greensboro, North Carolina. BH Media News & Record (hereinafter, the "News & Record") is the principal media source for Greensboro and the surrounding region, and one of the most circulated newspapers in the state. The News & Record employed Ms. Price from 2016 to 2017.

10. The News & Record is an "employer" within the meaning of 42 U.S.C. §2000e(b). It is an industry affecting commerce and has had more than 15 employees in each of twenty or more calendar weeks in the years during which Ms. Price was employed, within the meaning of 42 U.S.C. §2000e(b).

11. **Defendant BH Media Group, Inc.** is a wholly-owned subsidiary of Defendant Berkshire Hathaway, Inc., with its headquarters in Omaha, Nebraska. Defendant BH Media Group, Inc. (hereinafter, "BH Media") owns and operates 77

3

newspapers and other titles in ten states across the United States. BH Media's holdings include Defendant News & Record located in Greensboro, North Carolina, where Ms. Price was employed. BH Media and its management had, at all relevant times, full knowledge of the events, misconduct, actions and inactions described herein.

12. **Defendant Berkshire Hathaway, Inc.** is a publicly-traded, multinational conglomerate holding company headquartered in Omaha, Nebraska. Defendant Berkshire Hathaway (hereinafter "Berkshire Hathaway") is the parent company of BH Media Group and the News & Record. Upon information and belief, Defendant Berkshire Hathaway and its management had, at all relevant times, full knowledge of the events, misconduct, actions and inactions described herein.

13. **Defendant Kelly Young** is a male resident and citizen of the State of North Carolina. Defendant Young was also employed by the News & Record and worked closely with Plaintiff during her employment. He has been convicted of indecent exposure.

## JURISDICTION

14. At all times relevant to this action, Ms. Price was employed by BH Defendants in this judicial district, namely in Guilford County, North Carolina.

15. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because this is a collective action based on discriminatory pay in violation of the Equal Pay Act, 29 U.S.C. § 216(b), *et seq*. (Count I), and an individual action based on sexual harassment in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Count II), race and sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Count III),

4

employer retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count IV) and constructive discharge in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Count VI).

16.     This Court has supplemental jurisdiction over Plaintiff's statutory state law claims for employer retaliation in violation of the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. Ann. § 95-240, *et seq* (Count V), and Plaintiff's state common law claims for wrongful termination of employment in violation of North Carolina Public Policy (Count VII), intentional infliction of emotional and mental distress (Count VIII), and simple assault (Count IX).

## VENUE

17.     The News & Record's principal place of business is Greensboro, Guilford County, North Carolina, which is within this judicial district.

18.     Defendants News & Record, BH Media and Berkshire Hathaway all regularly conduct affairs and business activities in this judicial district.

19.     This judicial district is where Plaintiff and Defendant Kelly Young worked for the News & Record, and where Plaintiff would have continued to work but for BH Defendants' unlawful employment practices.

20.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful conduct of which Plaintiff complains is alleged to have been committed in this judicial district.

21.     Venue in this Court is also proper pursuant to 31 U.S.C. § 3732(a) because Defendants News & Record, BH Media and Berkshire Hathaway regularly conduct business in this judicial district.

## **PROCEDURAL STATUS**

22.     Plaintiff filed a timely Charge of Discrimination with the EEOC against BH Media News & Record in March 2017 (Charge No. 435-2017-00411).  Her charge stated that the News & Record was owned by BH Media and Berkshire Hathaway, and it mentioned Defendant Young by name.

23.     On June 27, 2019, at the request of Ms. Price, the EEOC issued to her a Notice of Right to Sue.

## **FACTS**

24.     Ms. Price was hired by the News & Record on May 18, 2016 in a sales position as part of the newspaper's Digital Team.  Defendant Kelly Young was on the same team and worked closely with Ms. Price.

25.     Soon after Ms. Price was hired, she discovered that she was being discriminated against on the basis of race.  This was evident due to a pay disparity between Ms. Price and a similarly situated white employee.  The white employee was being paid $5,000.00 more annually than Ms. Price, despite having very comparable duties and less experience.

26.     In July 2016, Ms. Price applied for and received one of two new Advertising Key Account Executive positions in the newspaper's advertising department. In this position, Ms. Price's duties included selling print and digital advertising space to universities, banks, and entertainment venues, such as the Greensboro Coliseum and basketball arenas.

6

27.     Although she had received the promotion, the discrimination did not stop; in fact, it became more severe with her new boss, Advertising Director Bill Buschmann, and was based on her sex and race.  Ms. Price's new position, Advertising Key Account Executive, was one of two identical new positions.  The other position was given to Andy Brehm, a white male with no advertising experience, in stark contrast to Ms. Price's nine years of advertising experience.  Ms. Price was to handle advertising for universities, banks, and entertainment/venues, while Mr. Brehm was to handle hospitals and local retail stores.

28.     Despite their clearly-defined responsibilities and clearly-assigned account list, Mr. Buschmann regularly bypassed Ms. Price and gave university, bank, and venue client accounts to her white male counterparts, Damon Crone and Andy Brehm. Although these large accounts should have fallen under Ms. Price's purview, her white male colleagues were instead assigned to handle them. As a direct result of this discriminatory process, Ms. Price was unable to enjoy the same opportunity to earn commissions similar to those of her white male colleagues.

29.     On August 23, 2016, Ms. Price sought the assistance of the local Human Resources Representative, Aimee Caron, and documented the discrimination and pay issues on the Berkshire Hathaway Ethics Hotline.  A meeting was arranged to address the problem directly with the Advertising Director, Mr. Buschmann and Gail Whiting, the Regional Advertising Director on September 1, 2016.

30.     During this meeting, Ms. Price received numerous, conflicting excuses.  Ms. Price specifically requested the same training and guidance offered to Mr. Brehm, but her

7

concerns, complaints and training requests to management were repeatedly dismissed. Ms. Price's effort to address the wage disparity and discrimination she had experienced was met with resistance, and no resolution of the treatment was ever reached.

31.     Soon after Ms. Price met with HR about her complaints, Mr. Buschmann began to retaliate. He intentionally impeded and interfered with Ms. Price's work. For example, he withheld client contact information for Capital Bank and other information from advertising representatives that Ms. Price needed to perform her duties. Around the same time.  Mr. Buschmann began to make derogatory comments about minority advertising clients—namely African-American clients at North Carolina A&T University (a historically black college) and Guilford Technical Community College, and Hispanic clients at Compare Foods. He never made these insulting comments about white clients. Concerned, Ms. Price reported the statements to HR.

32.     On or about September 30, 2016, Mr. Buschmann's derogatory statements of minority clients escalated to making a statement to Ms. Price and three white male coworkers that "jokingly" suggested shooting Tarik Cohen, the black running back at the time for the North Carolina A&T University football team: "I thought, the only way you can stop him is take a gun a shoot him."  Ms. Price perceived Mr. Buschmann's statement to be intimidating and demeaning.  Apparently, so did others, because the incident was reported to HR at the time.  Since Ms. Price was the only Black Advertising Representative in the department, Mr. Buschmann mistakenly assumed Ms. Price had reported it, and intensified his retaliation.

33.     By early 2017, Ms. Price was routinely written up for being "aggressive," a vague critique and pejorative stereotype of African-American women.  This was clearly pretext for retaliation.  Due to the severity and frequency of the retaliation Ms. Price experienced, she grew afraid of reporting any issues to HR or management, including the egregious and repeated sexual harassment soon inflicted by her coworker, Kelly Young.

34.     It is apparent, however, that BH Defendants were already aware of Defendant Young's inappropriate and harassing conduct.  Defendant Young had exposed his genitals to at least one female News & Record employee, who reported that conduct, as early as 2014.   Additional reports of his misconduct were made in 2016, with each female victim describing multiple occurrences of close-range indecent exposure by Defendant Young, prior to the incidents with Ms. Price.

35.     Although HR had repeatedly been notified of Defendant Young's sexual harassment of female employees, nothing was done to address this outrageous sexual harassment.  Despite having perpetrated this egregious sexual misconduct *at least* ten times, Defendant Young was not terminated, put on leave, or otherwise disciplined.

36.     The News & Record's inaction in addressing Defendant Young's criminal and serial deviant behavior in the workplace allowed him to continue harassing women for years, including Ms. Price. Ms. Price's first incident with Defendant Young happened shortly after HR had refused to intervene in the earlier reports of misconduct to prevent Defendant Young from preying on the female employees of the News & Record.

37.     Just before Thanksgiving 2016, Ms. Price was seated at her desk and engaged in her work.  As Ms. Price's back was towards the entrance of her cubicle, Defendant

Young walked up behind her chair holding a manila folder in front of his crotch. As Ms. Price turned towards Defendant Young, he removed the folder, revealing his bare, semi-erect penis. He had premeditatedly pulled his penis out of his pants and exposed it right in front of Ms. Price's face as he stood over her as she sat in her chair.

38.     The incident came as a shock to Ms. Price, as she had never experienced any problems working with Defendant Young in the months preceding the first incident. She did not know what to do, but turned back around in her chair to make clear to Defendant Young that this assault was unwelcome.

39.     In response to Ms. Price turning away from Defendant Young, he moved closer to her, bending forward to look over Ms. Price's shoulder and view her computer screen, while mumbling under the pretense of work-related small talk. Ms. Price, trapped between Defendant Young's exposed penis and her desk, did not speak, but waited for Defendant Young to leave. Once he finally did, Ms. Price immediately called her coworker, Karen Lowe, and confided to her about what she had experienced.

40.     A few days later, Defendant Young approached Ms. Price again at her desk and repeated this well-practiced routine. He had removed his genitals from his pants and hidden them behind a manila folder, when he walked up behind Ms. Price and, as she turned, exposed himself to her. Defendant Young was standing within a foot of Ms. Price when he did this. As Ms. Price turned back towards her desk, Defendant Young again moved closer, bending forward over Ms. Price's shoulder to view her computer screen. Defendant Young again mumbled worked-related questions for several minutes while

trapping Ms. Price between his exposed penis and her desk.  Ms. Price, afraid of being touched, remained still and did not respond, and after several minutes, he left.

41.    Extremely upset, Ms. Price again called coworker, Ms. Lowe, and confided in her about the second incident. The continuing incidents had a tremendous impact on Ms. Price, causing her severe anxiety, fear, and humiliation.

42.    Even worse, she knew she had no recourse at the News & Record, BH Media or Berkshire Hathaway.  Defendant Young was well-respected, well-liked and a highly skilled digital design employee.  Defendant Young served as a "pray leader" in the office's weekly Noon Day Prayer Group, was captain of the company-sponsored kickball team, had recently been awarded for his editorial design work, and solely undertook the corporate digital initiative to overhaul and reformat the News & Record's website, greensboro.com. She was concerned that—given this and HR's demonstrated indifference—she would not be believed or be subjected to worsening harassment if she reported the incident.  By this time, however, BH Defendants were long-aware of Defendant Young's pathological sexual misconduct, which had been repeatedly perpetrated on female employees at the News & Record.

43.    Although she hoped the harassment would end once she returned from the Thanksgiving holiday, it did not.  On December 1, 2016, Defendant Young approached Ms. Price once again, but this time from a different direction in the office.  Ms. Price saw Defendant Young approaching her desk and this time was not caught off guard.  As Defendant Young entered Ms. Price's cubicle, he removed the manila folder to expose himself and walked closer to Ms. Price in her seat. Ms. Price assertively told Defendant

Young "no" several times while he flashed his penis at her. Ms. Price's voice grew louder with each protest, eventually scaring Defendant Young back to his office. Once back in his office, he sent Ms. Price an email saying he was "sorry about that."

44. Over the next several months, Ms. Price regularly saw Defendant Young walking around near her desk, near the Editorial Design Department and in the Classified Department. On one occasion, she witnessed Defendant Young at the desk of another female employee, holding a manila folder while bent over her shoulder as though viewing her computer screen. Upon seeing this, Ms. Price grew extremely anxious and fearful that he may approach her again and expose his genitals.

45. It was also during this time Ms. Price became concerned for her personal safety. As Defendant Young had exhibited serious sex offender behavior, Ms. Price became aware that the chaste persona he portrayed in the workplace was a facade. Ms. Price discovered Defendant Young had been convicted of an Assault Inflicting Serious Bodily Harm for breaking a man's jaw, a violent physical act. She worked and lived in constant fear, knowing Defendant Young's predatorial sexual behavior and his past violent behavior.

46. From January to March 2017, Ms. Price continued to experience discrimination, discriminatory sales practices, and retaliation by Mr. Buschmann. On March 9, 2017, Ms. Price emailed BH Media Corporate HR Manager, Vicki Broussard, and filed a complaint against Mr. Buschmann on the Berkshire Hathaway Ethics Hotline for "sales goal fixing," continued favoritism towards her white male counterpart, and other retaliatory conduct.

12

47.     On March 28, 2017, BH Media internally announced a major layoff at the News & Record property.  Ms. Price learned that Defendant Young had been "laid off," but an opening for his position had been posted by his manager soon thereafter.

48.     On March 31, 2017, Ms. Price filed her original charge with the EEOC regarding the discrimination and retaliation she faced at the News & Record, and on the same day, submitted a written complaint of the sexual harassment against Defendant Young on the Berkshire Hathaway Ethics Hotline.

49.     On April 1, 2017, Ms. Price filed a police report with the Greensboro City Police Department in relation to Defendant Young's sexual harassment incidents in the workplace.

50.     On April 7, 2017, Detective Ellsworth of the Greensboro Police Department called Ms. Price to notify her that, during his investigation into the criminal charges against Defendant Young, he discovered that another of Defendant Young's victims had reported a similar indecent exposure incident to the News & Record prior to the assaults on Ms. Price.

51.     All of this information increased Ms. Price's anxiety and fear, and daily apprehension being in her workplace.  On April 17, 2017, Ms. Price's physician wrote a letter to the News & Record requesting that she work from home until May 3, 2017, when she could get in to see a psychiatrist.  The request was summarily denied.

52.     On April 18, 2017, Danny Finnegan, publisher of the News & Record, sent an email to all staff forewarning them of an article that would soon be published on the News & Record website related to the arrest, indecent exposure charges and termination of

13

Defendant Young. Mr. Finnegan stated, "the police report states the alleged incident took place on News & Record property" and continued by stating "we are publishing this information out of our obligation to transparency."

53.     On April 20, 2017, Ms. Price met Mr. Finnegan, who informed her that they had been aware of Defendant Young's inappropriate and criminal behavior towards other female employees since at least early November 2016. Ms. Price felt betrayed, shocked and disgusted. The News & Record, BH Media and Berkshire Hathaway had long been aware of Young's behavior but took no proper measures to remedy the situation nor protect its female employees from continued criminal, sexual harassment. Ms. Price had been repeatedly assaulted in her own cubicle as a result.

54.     Ms. Price informed Mr. Finnegan that, according to the police, at least three separate victims had been subjected to indecent exposure crimes on the News & Record property. When Ms. Price asked if the company knew of Defendant Young's assault conviction, Mr. Finnegan declined to answer. Ms. Price stated she was in constant fear for her safety and had already experienced hostility from others in the workplace due to Mr. Finnegan's April 18th email. Ms. Price also addressed Mr. Buschmann's continued retaliatory conduct and discriminatory practices. She lastly raised concerns about HR dismissing her request to temporarily work remotely, based on the foregoing emotional difficulty of being physically present at work. Mr. Finnegan did nothing to assuage a single one of these issues.

55.     The retaliation continued and it became clear, given their response to Defendant Young's egregious harassment, that BH Defendants would not protect Ms. Price

14

in her workplace.  The ongoing discrimination and retaliation she endured, paired with the discovery that her employer had patently permitted ongoing, severe workplace sexual harassment by harasser that had previously been convicted of a physical assault, created a work environment that Ms. Price could no longer reasonably tolerate.  On April 24, 2017, Ms. Price provided management with her resignation letter. As she had no reasonable option but to resign, Ms. Price was constructively discharged.

56.     On May 3, 2017, Ms. Price was diagnosed by her psychiatrist with severe anxiety, depression and post-traumatic stress disorder.

57.     BH Defendants wholly failed to keep their employees safe from sexual harassment.  Berkshire Hathaway —from the top all the way down to its media properties—has a male-dominated corporate culture ingrained with sexual harassment, dirty jokes and inappropriate commentary about females.

58.     Indeed, Mr. Warren Buffett, the CEO of Berkshire Hathaway, has repeatedly made *public* derogatory comments about women, even when describing his business.  In a letter to investors, he compared a bad business deal to an unattractive woman: "I've never gone to bed with an ugly woman, but I've sure woke up with a few."

59.     In a 2017 interview with CNBC, Mr. Buffett explained his attempted acquisition of a disinterested company with a wildly inappropriate statement regarding a woman's consent to sexual acts: "And if a lady says no, she means maybe. And if she says maybe, she means yes. And if she says yes, she's no lady."

60.     This mentality has trickled down to Berkshire Hathaway's properties, including the News & Record, where male employees feel they can prey on women with

15

impunity. Berkshire Hathaway's top officials know about—and indeed fostered—this misogynist culture and have done virtually nothing to stop it. Indeed, the sexual harassment policies at Defendant companies are purely paper tigers—purporting intolerance of sexually inappropriate conduct in the workplace but baring no teeth or genuine enforcement.

## COLLECTIVE ACTION ALLEGATIONS (EQUAL PAY ACT)

61. BH Media Group, Inc. has engaged in systemic gender discrimination against its female sales employees at each of its media properties nationwide. BH Defendants and their management have caused, contributed to, and perpetuated gender-based pay disparities through their policies, practices and procedures, including but not limited to their compensation schemes, assignment of advertising accounts and promotion practices.

62. BH Defendants have perpetuated a culture that marginalizes, demeans, and undervalues women. They discriminated against women by allowing the predominantly male management to overtly favor advertising salesmen in pay, subjecting advertising saleswomen to differential treatment and disparate pay. Female advertising sales employees at BH Media properties nationwide are subjected to sexist assignment of accounts, increased scrutiny over their performance and contributions, and greater difficulty obtaining promotions or pay raises. In so favoring men, sexism has permeated the workplace and created pay differentials between advertising saleswomen and salesmen.

63. Ms. Price brings collective claims alleging violations of the EPA, as a collective action pursuant to 20 U.S.C. § 216(b) on behalf of all members of the Collective Action Class. The Collective Action Class consists of all female employees who are or

16

have been employed by BH Media Group, at any of its properties, in an advertising sales position going back three years from the dates they join this action, plus any additional tolling ordered by the Court.

64.     Ms. Price seeks to represent all females who are or have been in advertising sales positions at BH Media Group properties, and maintains that they were paid less than male advertising sales employees for performing substantially equivalent work. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

65.     Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C § 216(b) because Plaintiff's claims are similar to the claims of the Collective Action Class.

66.     Ms. Price and the Collective Action Class are similarly situated under the EPA because they (a) share common job positions and responsibilities and (b) are subject to BH Defendants' common compensation policies, practices, and procedures and centralized decision-making that resulted in unequal pay based on sex. Because of these common practices, Defendants failed to compensate female advertising sales employees at a level commensurate with male advertising sales employees who perform substantially equal work in equivalent job positions.

**COUNT I**
**VIOLATIONS OF THE EQUAL PAY ACT**
**29 U.S.C. § 216(b),** *et seq.*
**(On Behalf of Plaintiff, in Her Individual and Representative Capacities, and the Collective Action Class Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

67.     Paragraphs 1 through 66 are realleged as though fully set forth herein.

68.     This Count is brought on behalf of Plaintiff in her individual and representative capacities and the Collective Action Plaintiffs described herein under the Equal Pay Act pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which guarantees females equal pay for equal work.

69.     BH Defendants have violated the Equal Pay Act by providing Ms. Price and the Collective Action Class with a lower rate of pay than similarly situated male colleagues on the basis of their gender, female, even though Plaintiff and the Collective Action Class performed similar duties requiring the same skill, effort, and responsibility as their male counterparts under similar working conditions.

70.     Ms. Price and the Collective Action Class members were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties.   Additionally, Ms. Price and the Collective Action Class members were held back to lesser pay levels than male employees who performed substantially equal work, including those with substantially similar experience.

71.     Ms. Price and the Collective Action Class were similarly situated with respect to their male counterparts.  For example, Andy Brehm and Ms. Price held the same

job title and performed the same duties, but Mr. Brehm, with no advertising sales experience like Ms. Price, earned a higher salary.

72.     Further, Plaintiff and the Collective Action Class were deprived of commission on accounts that went to their male counterparts instead of them, due to discriminatory practices in the assignment of advertising accounts.  For example, Plaintiff's male counterparts, including Damon Crone and Mr. Brehm, were given advertising accounts that should have gone to Ms. Price.  These accounts, although they fell within her purview, were denied to her due to her gender and her white male counterparts received the commissions on such accounts instead of her.

73.     Plaintiff and the Collective Action Class were also subjected to discriminatory promotion and pay increase practices, which has further resulted in their male counterparts receiving higher rates of pay despite doing the same work.

74.     BH Defendants discriminated against Plaintiff and the Collective Action Class by subjecting them to disparate, discriminatory pay in violation of the EPA.  The differential in pay between members of the Collective Action Class, including Ms. Price, and their male counterparts was not due to any legitimate system of merit, quantity or quality of production, or any factor other than sex. It was due to gender.

75.     BH Defendants caused, attempted to cause, or contributed to the continuation of pay discrimination based on gender, in violation of the EPA. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because BH Defendants have willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

19

76.     As a result, Plaintiff and the Collective Action Class have suffered and will continue to suffer harm, including, but not limited to lost earnings, lost benefits and other financial loss, as well as non-economic damages.

77.     Plaintiff and the Collective Action Class are entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages, interest, and other compensation pursuant to 29 U.S.C. § 216(b).  Attorneys' fees should be awarded under 29 U.S.C. §216(b).

### COUNT II
### SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e, *et seq.*, as amended
### (On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)

78.     Paragraphs 1 through 77 are realleged as though fully set forth herein.

79.     BH Defendants engaged in unlawful employment practices prohibited by Title VII by creating a sexually-hostile work environment based on sex and subjecting Ms. Price to this environment during the course of her employment.

80.     Management and supervisory employees had actual or constructive knowledge of this sexually-hostile environment, yet failed to take proper action to remedy the situation.  As a result, BH Defendants denied Ms. Price her personal right to work in an environment free of sexual harassment.

81.     Specifically, as described herein, Ms. Price was repeatedly the victim of the indecent exposure of a male coworker's bare genitalia at close range while seated in her own cubicle.  Beginning in late November 2016, Defendant Young harassed and assaulted

20

Ms. Price on three separate occasions, due to BH Defendants' disregard for their employees' safety.

82.     Defendant Young repeatedly exposed his bare, semi-erect penis to Ms. Price, and stood very close to her, with his genitalia out, for minutes at a time. She was trapped between her desk and his penis, unable to move and with no place to escape. This conduct terrified and embarrassed Ms. Price. In addition, Ms. Price lived in constant fear of another unwanted encounter with and possible threat of physical harm by Defendant Young for months.

83.     BH Defendants had been aware of Defendant Young's sexual misconduct against other female employees for years but made no effort to adequately remedy it. At most, Defendant Young was given a slap on the wrist—a simple verbal warning not to engage in such behavior again. This disciplinary action is grossly disproportionate to the severity of his offense.

84.     As such, Defendant Young was emboldened, and his misconduct escalated. This led directly to his harassment of Ms. Price, and create a sexually-hostile work environment. This harassment and discrimination created a hostile and intolerable work environment and constitutes a violation of Title VII of the Civil Rights Act of 1964, as amended.

85.     Defendants News & Record, BH Media Group and Berkshire Hathaway are each liable for the actions of Defendant Young. By not responding to Defendant Young's ongoing, severe and known sexual harassment, these Defendants condoned, tolerated and/or ratified his behavior. BH Defendants' practices have been sufficiently severe or

21

pervasive to create an environment that is both subjectively and objectively hostile and abusive.

86.     As a result of BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

87.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**RACE AND GENDER DISCRIMINATION**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e, *et seq.*, as amended**
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

88.     Paragraphs 1 through 87 are realleged as though fully set forth herein.

89.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, provides that:

(a)     It shall be an unlawful employment practice for an employer

(1)     to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)     to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise

22

adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

90.     Defendants News & Record, BH Media Group and Berkshire Hathaway engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of sex and race.  BH Defendants treated Plaintiff differently from and less preferably than similarly situated white employees and male employees, and subjected her to discriminatory compensation policies, differential treatment, disparate terms and conditions of employment, hostile work environments and/or other forms of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et seq., as amended ("Title VII").

91.     Ms. Price was paid less than her white, male employees performing substantially similar work.  Mr. Brehm and Ms. Price held the same job title and performed the same duties, but Mr. Brehm, having far less advertising experience than Ms. Price, earned a higher salary. In addition, Mr. Buschmann referred to Mr. Crone and Mr. Brehm client accounts that clearly fell under Ms. Price's purview. This deprived Ms. Price the opportunity to earn commission on those accounts, which Mr. Crone and Mr. Brehm earned instead.

92.     Further, Mr. Buschmann regularly favored white, male employees over Ms. Price, providing them with superior terms and conditions of employment.  Mr. Buschmann also made racially derogatory remarks towards minorities—including African-Americans—in the workplace.

93.     BH Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Plaintiff.

94.     As a direct and proximate result of BH Defendants' actions, Ms. Price has suffered and continues to suffer economic losses and severe emotional distress.  Such injury includes pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses and other nonpecuniary losses.

95.     Due to the severity of BH Defendants' knowingly wrongful conduct, undertaken with malice and oppression, Ms. Price is entitled to punitive or exemplary damages.

96.     Defendants News & Record, BH Media Group and Berkshire Hathaway also engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of sex and race when determining her wage.

97.     As a result of BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

98.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief.  Attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e, *et seq.*, as amended**
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

99.     Paragraphs 1 through 98 are realleged as though fully set forth herein.

100.    Rather than remedy the pay disparity between Ms. Price and her white, male colleagues, HR did nothing to resolve the issue. Mr. Buschmann then retaliated against Ms. Price for complaining to HR and demanding equal pay.

101.    In response to Ms. Price's complaints of discrimination, Mr. Buschmann escalated his discriminatory treatment of Ms. Price, passing off her accounts to Mr. Crone and Mr. Brehm and routinely had her written up for being "mean" or "too aggressive." Ms. Price was singled out in retaliation for her complaints and requests to remedy the discrimination she experienced.

102.    As a direct and proximate result BH Defendants' retaliation, Ms. Price has suffered and continues to suffer loss of income and severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses and other nonpecuniary losses.

103.    As a result of BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm,

emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

104.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, punitive damages, and other appropriate relief. Attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

105.    Due to the severity of BH Defendants' knowingly wrongful conduct, undertaken with malice and oppression, Ms. Price is entitled to punitive or exemplary damages.

**COUNT V**
**RETALIATION IN VIOLATION OF THE NORTH CAROLINA**
**RETALIATORY EMPLOYMENT DISCRIMINATION ACT**
**N.C. Gen. Stat. Ann. § 95-240, *et seq.***
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

106.    Paragraphs 1 through 105 are realleged as though fully set forth herein.

107.    Ms. Price, in good faith, took action under North Carolina law to remedy the pay disparity between herself and her white, male colleagues, and to address other discrimination that she experienced based on her sex and race.

108.    In response to Ms. Price's complaints of discrimination, Ms. Price experienced retaliation in the terms, conditions, privileges and/or benefits of her employment, as described herein.

109.    BH Defendants' conduct constitutes a violation of North Carolina's Retaliatory Employment Discrimination Act. In addition, BH Defendants are vicariously liable for the retaliatory actions of its employees, including Mr. Buschmann.

110.    As a result of BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

111.    Plaintiff is entitled to all legal and equitable remedies available for violations of REDA, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and other appropriate relief.

112.    Due to the severity of BH Defendants' knowingly wrongful conduct, undertaken with malice and oppression, Ms. Price is entitled to punitive or exemplary damages.

## COUNT VI
## CONSTRUCTIVE DISCHARGE FROM EMPLOYMENT
## IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e, *et seq.*, as amended
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

113.    Paragraphs 1 through 112 are realleged as though fully set forth herein.

114.    BH Defendants wrongfully terminated Ms. Price, *vis a vis* constructive discharge, in retaliation for her complaints to HR, in retaliation for filing an EEOC charge against and/or due to sex discrimination.

115.    BH Defendants engaged in a continuous course of conduct that condoned the sexual harassment perpetrated by Defendant Young.  Management was aware of Defendant

Young's previous and ongoing sexual misconduct at the News & Record offices against News & Record employees but took no proper measures to address the issue.

116.    In addition, BH Defendants and their agents retaliated against Plaintiff for her complaints to HR and the Berkshire Hathaway Hotline, filing an EEOC complaint against BH Media News & Record and lodging a criminal complaint against Mr. Young.

117.    As a result, she was subjected to such unbearable work conditions— i.e., discrimination, retaliation, and sexual harassment—that she had no other option but to resign.  These conditions were deliberately made intolerable by BH Defendants, and their agents, supervisors and employees.

118.    The direct, proximate and foreseeable result of the intolerable working conditions created and sustained by BH Defendants was that Plaintiff was forced to resign from her position at the News & Record.

119.    Due to BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

120.    Plaintiff is entitled to all legal and equitable remedies available under the law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and other appropriate relief.  Attorney's fees should be awarded under 42 U.S.C. § 2000e-5(k).

121. Due to the severity of BH Defendants' knowingly wrongful conduct, which has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to the rights of Plaintiff, Ms. Price is entitled to punitive or exemplary damages.

## COUNT VII
## WRONGFUL DISCHARGE IN VIOLATION OF
## NORTH CAROLINA PUBLIC POLICY
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendants BH Media News & Record, BH Media Group, Inc., and Berkshire Hathaway, Inc.)**

122. Paragraphs 1 through 121 are realleged as though fully set forth herein.

123. The North Carolina Equal Employment Practices Act, N.C. Gen. Stat. Ann. § 143-422.2, provides that:

> (a) It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

> (b) It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

124. Plaintiff was a female employee of Defendant News & Record, an employer within the definition of N.C. Gen. Stat. Ann. § 143-422.2(a), owned and operated by Defendants BH Media and Berkshire Hathaway.

125. BH Defendants subjected Plaintiff to a hostile work environment based on her gender. Namely, Defendant Young repeatedly exposed his bare penis to her, within a very short range. This conduct was unwanted, inappropriate, and sexual.

29

126. A reasonable person in Plaintiff's situation would have considered the conduct to be significant, and Plaintiff considered the conduct significant.

127. BH Defendants had been aware for years that Plaintiff's co-worker, Defendant Young, was exposing his genitals to female employees at the News & Record. They did nothing to remedy the egregious misconduct and permitted him to continue working there with no disciplinary action. Moreover, in the exercise of reasonable care, BH Defendants should have known of Defendant Young's conduct and failed to exercise reasonable diligence to prevent such conduct.

128. BH Defendants lack a meaningful and responsive procedure for investigating sexual harassment and discriminatory conduct, and for taking action to genuinely address such conduct. BH Defendants further lack adequate policies and training around sexual harassment designed to effectively prevent such harassment.

129. As a result of BH Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

130. Plaintiff is entitled to all legal and equitable remedies available under North Carolina law, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees, costs and other appropriate relief.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On Behalf of Plaintiff in Her Individual Capacity Against All Defendants)

131.   Paragraphs 1 through 130 are realleged as though fully set forth herein.

132.   The conduct, described *supra*, perpetrated by Defendant Young was intentional or reckless in that it had the specific purpose of inflicting emotional distress on Ms. Price.  Defendant Young knew or should have known that severe emotional distress would likely result from his intentional, reckless and assaultive conduct.

133.   BH Defendants' conduct through their agents and representatives, described *supra*, was reckless in that it had the specific purpose of inflicting emotional distress on Ms. Price.  BH Defendants knew or should have known that severe emotional distress would likely result.  BH Defendants are responsible and liable for the intentional and reckless conduct of its agents, including their employee Defendant Young, because he committed these acts while in the course of his employment with BH Defendants.

134.   Furthermore, BH Defendants gave their agents and employees implied authority to engage in this conduct by permitting the continuation of a working environment in which this type of activity was allowed to occur.  BH Defendants also ratified the conduct by refusing to take effective remedial action.  Although they had actual and constructive knowledge of the harassment Defendant Young was engaging in, no action was taken to reprimand or discipline him by supervisors or management.

135.   In addition, as a direct result of the treatment of Ms. Price by Defendants, Ms. Price has suffered severe emotional distress.

136.   Defendants' conduct, as described *supra*, was outrageous and intolerable in that it offends generally accepted standards of decency and morality.

137.   This conduct by Defendants was actuated with malice, spite and ill will; was willful and wanton; and evinced conscious disregard for the rights of Ms. Price.

138.   As a direct and proximate result of Defendants' conduct, Ms. Price has suffered and continues to suffer severe emotional distress, including anxiety, embarrassment, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, suffering, inconvenience, mental anguish, and loss of enjoyment of life, as well as past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses and other nonpecuniary losses.

139.   Ms. Price is entitled to recover all damages available under the law, including compensatory, economic and punitive or exemplary damages.

### COUNT IX
### ASSAULT
**(On Behalf of Plaintiff in Her Individual Capacity Against Defendant Kelly Young)**

140.   Paragraphs 1 through 139 are realleged as though fully set forth herein.

141.   Kelly Young, on more than one occasion, came within a close proximity to Ms. Price and knowingly and willingly exposed his bare genitals.

142.   This terrified and embarrassed Ms. Price, causing her to fear for her safety.

143.   Ms. Price lived in fear of another unwanted encounter with Defendant Young every day she went to work.

144.    As a direct and proximate result of Defendant Kelly Young's misconduct, Ms. Price has suffered and continues to suffer severe emotional distress, including anxiety, embarrassment, diminished self-confidence and self-worth, feelings of helplessness and hopelessness, suffering, inconvenience, mental anguish, and loss of enjoyment of life, as well as medical expenses, other past pecuniary losses, future pecuniary losses and other nonpecuniary losses.

145.    Ms. Price is entitled to recover all damages available under the law, including compensatory and economic damages. Due to the severity of Defendant Young's sexual misconduct and assaults on Ms. Price, Ms. Price is also entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GAYLA PRICE requests that this Court enter judgment in her favor and against Defendants BH MEDIA NEWS & RECORD, BH MEDIA GROUP, INC., BERKSHIRE HATHAWAY, INC. and KELLY YOUNG, and further:

(a)    Certify the claims in Count I as a collective action under the EPA on behalf of Plaintiff and the Collective Action Class; designate Plaintiff as representative of the Collective Action Class; promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective Action, which (1) apprises them of the pendency of this action and (2) permits them to assert timely EPA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and toll the statute of limitations on the claims of all members of the Collective from the date the original Complaint was filed until the Collective Action members are provided with reasonable

notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Collective Action Plaintiff;

(b)     Declare and adjudge that the employment policies, practices, and/or procedures of Defendants BH Media News & Record, BH Media, Inc. and Berkshire Hathaway, Inc. challenged herein are illegal and in violation of the rights of Plaintiffs and members of the EPA Collective Action Class;

(c)     Issue an injunction against Defendants BH Media News & Record, BH Media, Inc. and Berkshire Hathaway, Inc. and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives, and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs, and those similarly situated as secured by the Equal Pay Act, and order such injunctive relief as will prevent Defendants from continuing their discriminatory practices and from engaging in any further unlawful practices, policies, customs, usages, and gender discrimination as set forth herein;

(d)     Order Defendants to adjust the wage rates and benefits for members of the Collective Action Class to the level that they would be enjoying but for the discriminatory policies, practices, and/or procedures of Defendants BH Media News & Record, BH Media, Inc. and Berkshire Hathaway, Inc.;

(e)     Award back pay, front pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff and members of the Collective Action Class, in an amount not less than $1,000,000;

34

(f)     Award compensatory and liquidated damages to Plaintiff and members of the Collective Action Class, in an amount not less than $1,000,000;

(g)     Order Defendants BH Media News & Record, BH Media, Inc. and Berkshire Hathaway, Inc. to make Plaintiffs and members of the Collective Action Class whole by providing them with any other monetary and affirmative relief, including relief necessary to compensate Plaintiffs for the harm incurred to their reputation and for emotional distress;

(h)     Award Ms. Price compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on each of the above-stated counts;

(i)     Award Ms. Price punitive and exemplary damages, in an amount to be determined by a jury, on each of the above-stated counts;

(j)     Award Ms. Price appropriate front pay and back pay, including all lost income and benefits of employment both past and future;

(k)     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiff and members of the Collective Action Class;

(l)     Award Plaintiff and members of the Collective Action Class all prejudgment interest and post-judgment interest available under law;

(m)     Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that BH Media News & Record, BH Media, Inc. and Berkshire Hathaway, Inc. have remedied the practices complained of herein and such practices are determined to be in full compliance with the law; and

(n)     Award Plaintiff and members of the Collective Action Class such other and further relief as may be appropriate.

## JURY DEMAND

Plaintiff GAYLA PRICE, individually and on behalf of others similarly situated, hereby demands a trial by jury with respect to each claim in this Complaint.

Dated:          September 18, 2019.

Respectfully submitted,

 _/s/_ Catharine E. Edwards_____
Catharine E. Edwards
NC Bar No. 52705
cedwards@edwardskirby.com
**EDWARDS KIRBY, LLP**
3201 Glenwood Ave., Suite 100
Raleigh, NC 27612
Telephone: (919) 780-5400
Facsimile:  (919) 800-3099

*Counsel for Plaintiff, Gayla Price*