IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GAYLA PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-960 |
| | ) | |
| GREENSBORO NEWS & RECORD, | ) | |
| LLC, BH MEDIA GROUP, INC., | ) | |
| BERKSHIRE HATHAWAY, INC., | ) | |
| and KELLY YOUNG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

In this employment discrimination case, the defendant Berkshire Hathaway, Inc. moves to dismiss for lack of personal jurisdiction. The plaintiff Gayla Price worked in Greensboro at Berkshire Hathaway's subsidiary from May 2016 to May 2017. Because the record shows that Berkshire Hathaway does not have the necessary minimum contacts with North Carolina to allow the Court to exercise personal jurisdiction over it, the Court will grant Berkshire Hathaway's motion.

**Background**

The Supreme Court recognizes two types of personal jurisdiction: general (or "all-purpose") jurisdiction and specific (or "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779–80 (2017). The parties agree that Berkshire Hathaway is not subject to general jurisdiction in North Carolina. *See* Doc. 13

at 9–10; Doc. 15 at 6. Accordingly, the Court will only consider whether Berkshire Hathaway is subject to specific jurisdiction in this case.

Out-of-state defendants are subject to specific personal jurisdiction only if both the forum state's long-arm statute and due process are satisfied. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In North Carolina, these considerations are co-extensive. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

To satisfy due process requirements, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).[1] This requires that a defendant have "purposefully directed his activities at the residents of the forum" and that the cause of action "arise[s] out of or relate[s] to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Burger King*, 471 U.S. at 475). Alternatively, a defendant may be subject to personal jurisdiction here if it is the alter ego or partner of an entity over which the Court already has jurisdiction. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 391–92 (4th Cir. 2018) (alter ego);

---

[1] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

*Design88 Ltd. v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873, 876 (W.D. Va. 2001) (citing *Young v. F.D.I.C.*, 103 F.3d 1180, 1193 (4th Cir. 1997)) (partner).

When, as here, a court examines personal jurisdiction based on the pleadings, motions, and affidavits—i.e., without an evidentiary hearing—the burden on the plaintiff is simply to make a prima facie showing of personal jurisdiction. *Sneha Media & Entm't, LLC v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018) (treating a 12(b)(2) motion "at such a preliminary stage . . . in conceptually the same manner" as a motion to dismiss under 12(b)(6)). The court must take the allegations in the light most favorable to the plaintiff, *id.*, resolving "all disputed facts and reasonable inferences in the plaintiff's favor." *D2L Ltd. v. Biggs*, No. CCB-18-2994, 2019 WL 3975656, at *1 (D. Md. Aug. 22, 2019) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).

Although the standard may be lenient, the court need not "credit conclusory allegations." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (table), 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting *Ticketmaster-N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994)). Blanket allegations as to multiple defendants are insufficient. *See Sterne v. Thompson,* No. 1:05 CV 477 JCC, 2005 WL 2563179, at *2 (E.D. Va. Oct. 7, 2005) (addressing Rule 12(b)(6) motion). A parent-subsidiary relationship does not by itself support jurisdiction. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Plaintiffs must base their claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

3

Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position. *See Velez v. Colon*, No. 1:18CV917, 2019 WL 4774162, at *2 (M.D.N.C. Sept. 30, 2019) (citing *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984)); *see also IMO Indus., Inc. v. SEIM s.r.l.*, No. 3:05-CV-420-MU, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006) (plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist"). Where both sides present evidence about personal jurisdiction, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993); *Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990); *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

**Facts**

Berkshire Hathaway has filed a declaration by its Vice President and Controller about the nature and extent of the company's contacts with North Carolina. *See generally* Doc. 13-1. The plaintiff has not responded with affidavits, but she has provided excerpts from her employee handbook, Docs. 15-1 to 15-3; a letter to employees of Berkshire Hathaway subsidiaries from the Berkshire Hathaway chair, Doc. 15-4; and what appears to be a BH Media Group website screenshot. Doc. 15-5. These exhibits supplement but do not contradict Berkshire Hathaway's evidence in any material way. The Court has also considered the specific, non-conclusory allegations of the

4

unverified complaint that Berkshire Hathaway's evidence does not dispute or that have been admitted by other defendants. *See* Doc. 10.

Based on the evidence of record and viewing it in the light most favorable to the plaintiff, the Court makes the following findings of fact.

Ms. Price worked for defendant Greensboro News & Record, LLC, or its successor, BH Media Group, from May 18, 2016, through May 5, 2017. *See* Doc. 3 at ¶¶ 8–11; Doc. 10 at p. 2, ¶¶ 8–9. Berkshire Hathaway is a holding company that owns BH Media Group. Doc. 3 at ¶ 12; Doc. 10 at ¶ 12; Doc. 13-1 at ¶ 8. Berkshire Hathaway has a separate board of directors and separate employees, assets, and bank accounts from BH Media Group. Doc. 13-1 at ¶ 9.

Berkshire Hathaway is incorporated in Delaware, with its principal place of business and headquarters in Omaha, Nebraska. *Id.* at ¶ 2. It is not registered to do business in North Carolina, and it does not have a registered agent, pay taxes, maintain an office, own or lease any property, manufacture products, or have any employees working in North Carolina. *Id.* at ¶¶ 3–5. It has no bank accounts or telephone numbers in North Carolina. *Id.* at ¶ 6.

Like Berkshire Hathaway, BH Media Group is headquartered in Omaha. *See* Doc. 15-5. BH Media Group's website indicates it is "A Berkshire Hathaway Company," *id.*, as does a 2015 BH Media Group Handbook, presumably for employees. *See* Doc. 15-1. On what appears to be one page of the handbook, employees are told that Berkshire Hathaway Inc. has adopted for itself and all of its subsidiaries, including BH Media

5

Group, a policy prohibiting employees from providing anything of value to any government employee. Doc. 15-3.

BH Media Group employees have access to an ethics hotline that Berkshire Hathaway provides. Doc. 13-1 at ¶¶ 8, 10. As disclosed in materials given to employees, *see* Doc. 15-4, Berkshire Hathaway does not handle calls to the hotline; instead, it has hired a third party for that purpose. Doc. 15-2 (instructing employees to "contact NAVEX Global at one of the Berkshire hotline numbers"); Doc. 15-3 ("Berkshire Hathaway has arranged for a third party service which allows employees to anonymously report concerns 24 hours a day . . . ."); Doc. 15-4 (letter from Berkshire Hathaway chair "[t]o all employees of Berkshire Hathaway Inc. and subsidiaries" referring to "a process that will enable you to report anonymously through an independent third-party organization . . . NAVEX Global"). The third-party administrator assigns the hotline phone calls or online submissions to the relevant subsidiary company for investigation. Doc. 13-1 at ¶ 10; Doc. 15-3; Doc. 15-4. Ms. Price called this ethics hotline during the course of her employment about the hostile work environment and discrimination, Doc. 3 at ¶¶ 29, 46, 48, and the third party assigned her complaints to BH Media Group for investigation. *See* Doc. 13-1 at ¶¶ 10–11.

## Analysis

Specific jurisdiction exists when the "suit aris[es] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To determine the existence of specific jurisdiction, courts consider "(1) the extent to which the defendant purposefully availed itself of the

6

privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*, 561 F.3d at 278. Only if a court finds that the plaintiff has satisfied the first prong of the test for specific jurisdiction does a court need to consider prongs two and three. *See id.* While the analysis is not a mechanical one, the Fourth Circuit has summarized the factors the courts have considered in deciding whether a defendant "purposefully availed" itself of the privilege of doing business in a state.[2] *Id*.

Here, none of the relevant factors indicate Berkshire Hathaway intended to do business in North Carolina. Berkshire Hathaway does not maintain offices or own property here. There is no evidence it engaged in business activities here or reached into the state to initiate such activities. Berkshire Hathaway's decision to make an ethics hotline administered by a third party available to employees of a North Carolina subsidiary does not show that Berkshire Hathaway directed its activities toward North Carolina. *See Hoffman v. Tyco Int'l, Ltd.*, No. 06-2961, 2006 WL 3759709, at *2–3 (E.D. Pa. Dec. 18, 2006) (citing cases).

---

[2] Those factors include: "whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum." *Consulting Eng'rs Corp.*, 561 F.3d at 278 (citing cases).

The Court may also exercise specific jurisdiction over Berkshire Hathaway if it is the alter ego or the partner of BH Media Group. Ms. Price has not offered any evidence to support the exercise of personal jurisdiction under the alter ego theory, which requires:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Krausz Indus. Ltd. v. Smith-Blair, Inc.*, 188 F. Supp. 3d 545, 556 (E.D.N.C. 2016) (quoting *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)). The excerpts of the BH Media Group manual, the website screenshot, and the Berkshire Hathaway letter, *see* Docs. 15-1 through 15-5, do show a connection between the two entities, but they do not show Berkshire Hathaway's "complete domination" over BH Media Group. Berkshire Hathaway's creation of a hotline, administered by a third party, does not indicate it controlled BH Media Group's overall employment practices or BH Media Group's investigation of hotline complaints, nor does the mere fact that it required employees of subsidiaries to report ethical concerns. *See* Docs. 15-3, 15-4. There is "no allegation or evidence of majority or complete stock control, and complete domination of finances, policy and business practice." *Krausz Indus.*, 188 F. Supp. 3d. at 557 (cleaned up and quoting *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330). To the contrary, Berkshire Hathaway has offered uncontroverted evidence that it has a separate board of directors,

8

assets, and bank accounts from, and that it does not exercise day-to-day control over the operations of, BH Media Group. Doc. 13-1 at ¶ 9.

Next, the Court may have personal jurisdiction over Berkshire Hathaway if it has a partnership with BH Media Group over which the Court has jurisdiction. *See Avanti Hearth Prods., LLC v. Janifast, Inc.*, No. 3:10–cv–00019–FDW, 2010 WL 3081371, at *3 (W.D.N.C. Aug. 6, 2010); *accord Walker v. White*, 609 F. Supp. 2d 529, 536–37 (W.D.N.C. 2009). In North Carolina, "[a] partnership is an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59-36(a). North Carolina courts have defined a partnership as "a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 437–38, 727 S.E.2d 291, 299 (2012); *see also Rhue v. Rhue*, 189 N.C. App. 299, 308, 658 S.E.2d 52, 59–60 (2008).

Here, Ms. Price has not alleged any facts concerning a profit-sharing agreement between Berkshire Hathaway and BH Media Group. Her assertions about Berkshire Hathaway's ownership of and control over BH Media Group—which she suggests as proof of partnership as well, *see* Doc. 15 at 11—are inconsistent with a partnership. The fact that the same in-state attorney represents both defendants in this litigation does not alone demonstrate they are acting in partnership or that BH Media Group is Berkshire Hathaway's alter ego.

9

In her brief, Ms. Price asks the Court for jurisdictional discovery on the alter ego and partnership theories. Putting aside the lack of compliance with the Local Rules, *see* L.R. 7.3, the Court exercises its discretion to deny the request, as she has not "articulated with reasonable particularity" the facts supporting application of either theory of jurisdiction. *Krausz Indus.*, 188 F. Supp. 3d at 557 (citing *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 (4th Cir. 2002)). Nor has she offered any evidence or information even hinting at facts to support these theories.

## Conclusion

Berkshire Hathaway has not purposefully directed its activities at the state of North Carolina, and it is not connected with BH Media Group in an alter ego or partner relationship so as to allow the Court to exercise jurisdiction over it. Accordingly, due process does not permit the exercise of specific personal jurisdiction over Berkshire Hathaway in North Carolina.

It is **ORDERED** that the defendant Berkshire Hathaway's motion to dismiss, Doc. 12, is **GRANTED**.

This the 6th day of February, 2020.

_____
UNITED STATES DISTRICT JUDGE

10

Case 1:19-cv-00960-CCE-JEP   Document 17   Filed 02/06/20   Page 10 of 10